Brad H. Bearnson (#3633)
Wayne K. Caldwell (#9466)
Aaron K. Bergman (#13147)
BEARNSON & CALDWELL, LLC
*Attorneys for Plaintiff, Robert Hampton*
399 North Main, Suite 270
Logan, Utah 84321
Telephone: (435)752-6300
Facsimile: (435)752-6301
Email: bbearnson@bearnsonlaw.com
Email: wcaldwell@bearnsonlaw.com
Email: abergman@bearnsonlaw.com
*For emails, please cc: bjensen@bearnsonlaw.com*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, NORTHERN DIVISION**

| ROBERT HAMPTON, | **COMPLAINT & JURY DEMAND** |
|---|---|
| Plaintiff | |
| v. | |
| STATE OF UTAH DEPARTMENT OF CORRECTIONS, a Utah Government Agency; and DOES 1 through 50, inclusive, | Honorable Judge:  Brooke C. Wells<br>Appointed Magistrate:<br>Case No.  1:18-cv-00079 |
| Defendants. | |

COMES NOW Plaintiff, ROBERT HAMPTON, an individual by and through his attorneys of BEARNSON & CALDWELL, LLC, and hereby complains against Defendant, STATE OF UTAH DEPARTMENT OF CORRECTIONS, a Utah Government Agency, and complains as follows.

## NATURE OF ACTION

1. This is an action to seek redress for the State of Utah Department of Corrections' unlawful discrimination, retaliation, coercion and intimidation upon the Plaintiff, Mr. Robert Hampton.

2. Mr. Hampton seeks declaratory relief, injunctive relief, and money damages special and general under Title V of the Americans with Disabilities Act, and the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution pursuant to 42 U.S.C. § 1983.

3. Mr. Hampton seeks declaratory relief and injunctive relief under Titles I and V of the ADA and Section 504 of the Rehabilitation Act.

## PARTIES

4. ROBERT HAMPTON (hereinafter "Mr. Hampton" or "Plaintiff") is an individual, residing in Cache County, and a citizen of the State of Utah.

5. STATE OF UTAH DEPARTMENT OF CORRECTIONS, is a Utah Government Agency (hereinafter "Defendant" or "Department") dedicated to the management and supervision of convicted felons in the State of Utah, with its headquarters located in Draper, Utah.

6. DOES 1-50 are individuals and/or business entities that under information and belief are responsible for and liable to Mr. Hampton as a result of acts or omissions complained of herein. Mr. Hampton will amend this Complaint & Jury Demand to allege the true names and capacities of such defendants when the same is ascertained.

## JURISDICTION & VENUE

7. This Court has jurisdiction pursuant to 28 U.S.C. § 1331.   Plaintiff also seeks declaratory relief as authorized by 28 U.S.C. §§ 2201 and 2202.

8. On January 8, 2018, the Department denied Robert Hampton's appeal of termination, asserting that as a probationary employee Mr. Hampton lacked any grievance rights under the Department's grievance policies.

9. Mr. Hampton timely filed a charge with the United States Equal Employment Opportunity Commission. On April 11, 2018, the United States Department of Justice, Civil Rights Division, issued Mr. Hampton a letter of right to sue under Title I of the Americans with Disabilities Act of 1990, 42 U.S.C. 12111, et. seq. See Right to Sue Letter, attached hereto as Exhibit "A."

10. Venue in this Court is proper under 28 U.S.C. §1391.

11. Having exhausted his administrative remedies, Mr. Hampton brings this action within ninety (90) days.

12. Defendants have no governmental immunity as to any contractual obligations that exist between defendant and Mr. Hampton. See Utah Code § 63G-7-301(1)(a).

13. Defendants have no governmental immunity as to any valid claims by Mr. Hampton seeking this Court's declaratory or injunctive relief.

14. Defendants have no immunity as to any valid claims that may be pursued by Mr. Hampton under 42 U.S.C. § 1983.

## GENERAL ALLEGATIONS

15. Mr. Hampton was born with a congenital birth defect. He is missing the second and fifth digit (pointer finger and pinky finger) on both hands.

16. As a result of Mr. Hampton's disability, certain tasks require modification, especially in relationship to grasping, pulling, or performing other certain functions with his hands.

17. Mr. Hampton was previously employed with the Arizona State Department of Corrections, also working as a corrections officer.

18. In May of 2016, Mr. Hampton was hired as a correction officer by the Utah State Department of Corrections. (the "Department")

19. In February 2017, Mr. Hampton requested an accommodation as to the type of gun used by him while on shift. During this time, Mr. Hampton was frequently assigned to guarding inmates outside of the secured facility.

20. The request was for a Springfield 1911, as the grip had a smaller circumference, allowing Mr. Hampton better control over the sidearm.

21. Ms. Burge for the Department did not follow the outlined process in responding to Mr. Hampton's request; nor did she ever get back with Mr. Hampton on the disposition of his request, despite repeated communications from Mr. Hampton.

22. Nor did Ms. Burge include the State of Utah Risk Management and its disability coordinator, which would have been required had the accommodation been denied. Later, however, Ms. Burge admitted to Mr. Hampton that she never even processed the request.

23. During this time, Mr. Hampton's brother who also worked for the Department and was told by the Warden ". . . tell your brother not to make his ADA request until after he is off probation . . ."

24. In April 2017, Mr. Hampton was up for another position, and talked with the Major about his request for an accommodation. Mr. Hampton still never heard back, and was not provided with any accommodation.

25. On July 26, 2017, Defendant called Mr. Hampton into work early and without explanation terminated Mr. Hampton from his position.

26. The Department informed Mr. Hampton verbally that he was being terminated for an incident some 6 weeks earlier, when Mr. Hampton and another employee had removed a dead bird from the secured premises and used a golf-cart-vehicle to reach the dead animal. The other, nondisabled employee was not disciplined.

27. The Department also informed Mr. Hampton he was being terminated for an incident some 4 weeks earlier, where Mr. Hampton had dropped a few paintballs from a "VKS" located in a secure area. Mr. Hampton retrieved the paintballs, but the "VKS" had to be cleaned as a result of one of the paintballs breaking. Like the purported bird-incident, the nondisabled employee who had been showing Mr. Hampton the "VKS" at the time was not disciplined.

28. Mr. Hampton was never provided with his requested accommodation.

29. After being terminated, Mr. Hampton filed a charge with the EEOC. The Warden again came to Mr. Hampton's brother and stated 'why doesn't your brother just let this go?' When Mr. Hampton's brother responded that he was not involved, the Warden stated "good answer." As a result of this interaction, Mr. Hampton's brother refused to provide a statement for purposes of the EEOC proceedings.

30. After being terminated, and because he owned no other coat Mr. Hampton wore his work-coat when in town.

31. An officer reported that Mr. Hampton had been pretending to be an officer to try and obtain discounted meals, which was untrue.

32. Two police officers appeared at Mr. Hampton's home. The two men demanded Mr. Hampton turn over the work-coat, which Mr. Hampton had paid for. Mr. Hampton explained that it was his only coat, and handed one of the officers the patch on the coat, telling the officer that he would bring the shoulder patches after meeting with an attorney. The officer then revealed his knife, stating "that is not going to be good enough," as the two men proceeded to cut the shoulder patches away from Mr. Hampton's coat.

## FIRST CAUSE OF ACTION
Violation of the Rehabilitation Act
-- Defendant State of Utah Department of Corrections Division --

33. Plaintiff hereby incorporates each and every of the preceding paragraphs as if set forth fully herein.

34. Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, provides that: No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

35. Mr. Hampton's hand disability substantially limits at least one of Plaintiff's major life activities, Plaintiff is an individual with a disability under the Rehabilitation Act.

36. Mr. Hampton was fully qualified to be in the position and was able to perform all the essential functions of the position with the Department.

37.     The Department is an executive agency to which Section 504 of the Rehabilitation Act applies. As an executive agency subject to Section 504, the Department was required to not discriminate against Mr. Hampton; to provide reasonable accommodations to Mr. Hampton; ensure that a Disability Coordinator was assigned to address Section 504 compliance and accommodation requests; adequately maintain records of all complaints and requests for accommodation; and provide accessibility for all employment-related training. Furthermore, the Department was required to take measures to ensure against retaliation, intimidation, and interference.

38.     The Department did not comply with Section 504 as to Mr. Hampton. This can be seen in the fact that Mr. Hampton repeatedly requested an accommodation from the Department and received no response. This can also be seen in the lack of record keeping and knowledge had by the Department's resource specialist who by her own admission did not involve the disability coordinator, and never even processed Mr. Hampton's request.

39.     Similarly, the Department refused to provide Mr. Hampton with a simple accommodation as to the type of firearm he would use. The accommodation would not have constituted a material change in the Department's operations and the accommodation was necessary as to Mr. Hampton's own safety while at work.

40.     Similarly, the Department retaliated. Mr. Hampton was fired soon after requesting the accommodation, and on pursuing the matter via the Governmental Records Access Management Act and filings with the EEOC, Mr. Hampton was falsely accused of a crime, then intimidated and accosted at his home, and stripped of his property in a forceful, violent manner.

41. The Department's policy was against assisting disabled individuals in accordance with Section 504. Mr. Hampton's brother, who also worked for the Department, was specifically told to tell Mr. Hampton "do not ask for an accommodation."

42. As a result of the Department's actions, Mr. Hampton has been damaged in an amount to be proven at trial, has suffered harm, and will continue to suffer harm.

## SECOND CAUSE OF ACTION
Americans with Disabilities Act, Title I
-- Defendant State of Utah Department of Corrections --

43. Plaintiff hereby incorporates each and every of the preceding paragraphs as if set forth fully herein.

44. The Americans with Disabilities Act, 42 U.S.C. § 12101, et seq., prohibits employers from discriminating against qualified individuals because of a disability "in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112.

45. Mr. Hampton's hand disability substantially limits at least one of his major life activities, and as such Mr. Hampton is, under the ADA, an individual with a disability.

46. Mr. Hampton was fully qualified for his position with the Department, and could perform all the essential functions of the position. Plaintiff passed all of safety, physical fitness, and other training requirements before the Department terminated and disqualified Mr. Hampton.

47. The Department is a covered employer to which the ADA applies.

48. The Department terminated and disqualified Mr. Hampton from employment solely because Mr. Hampton has a hand disability. The Department made no individualized

assessment to determine whether Mr. Hampton could perform the essential functions of his position and be employed by the Department, or whether a reasonable accommodation would have enabled Mr. Hampton to be employed in his position by the Department, as is required under the ADA.

49. The Department did not treat other nondisabled but similarly situated employees the same. The employee involved in removing the dead bird was not terminated or disciplined. Similarly, the employee who showed Mr. Hampton the "VKS," which Mr. Hampton had never used, was not terminated or disciplined. Defendant's disparate actions violated the ADA.

50. The Department's termination and disqualification of Mr. Hampton on the basis of his disability, and the Department's failure to make an individualized assessment to determine whether Plaintiff could be employed or whether a reasonable accommodation would enable him to be employed by the Department, violated the ADA.

51. Similarly, the Department's failure to ever provide Mr. Hampton with a reasonable accommodation as to his firearm violated the ADA.

52. Similarly, the Department's overt intimidation discouraging Mr. Hampton from seeking a reasonable accommodation violated the ADA.

53. Similarly, the Department's termination and disqualification of Mr. Hampton constituted retaliation under the ADA.

54. While the Department told Mr. Hampton that he was being terminated for the 'dead bird' and 'VKS' incidents, these incidents had occurred some 4-6 weeks before.

55. The Department did not, previous to termination, seek to address these alleged violations with Mr. Hampton.

56. The Department, who did not act similarly towards other probationary employees, singled Mr. Hampton out long after the alleged incidents occurred. The Department raised these purported 'violations' with Mr. Hampton for the first time just before immediately terminating Mr. Hampton. The Department knew it would also thereafter deny Mr. Hampton any ability to contest his termination shy of engaging in litigation. For instance, when Mr. Hampton asked for a grievance procedure, the Department refused his request.

57. The Department's accusations against Mr. Hampton were unfounded. The Department asserted that Mr. Hampton had climbed atop of the golf-cart, when in-fact such was performed by the other employee, who was not similarly disciplined. The Department also accused Mr. Hampton of being dishonest in regards to the "VKS" incident, because when being first questioned about it, Mr. Hampton did not know what a "VKS" was and the Department had provided Mr. Hampton with no training on such. Once the acronym "VKS" was clarified, Mr. Hampton's purported 'evasiveness' disappeared, he was able to answer all of the Department's questions, and reported the event fully and truthfully.

58. In reality, the Department developed and pursued Mr. Hampton's termination because of Mr. Hampton's underlying disability and request for an accommodation.

59. As a result of the Department's actions, Mr. Hampton has been damaged in an amount to be proven at trial, has suffered harm, and will continue to suffer harm.

### THIRD CAUSE OF ACTION
Americans with Disabilities Act, Title V
-- Defendant State of Utah Department of Corrections --

60. Plaintiff hereby incorporates each and every of the preceding paragraphs as if set forth fully herein.

61. After defendant terminated and disqualified Mr. Hampton from his job, defendant began spreading rumors that he was wearing his work-coat to obtain benefits as an officer of the law. Mr. Hampton never sought such benefits, and wore his work-coat due to having no other.

62. Without a warrant and without due process of law, three officers, at least one of whom was defendant's agent or representative, arrived at Mr. Hampton's home.

63. The officers demanded Mr. Hampton's work-coat, which Mr. Hampton stated was his only coat.

64. Defendant's agent or representative then took out a knife, and with two armed officers at Mr. Hampton's side, defendant's agent or representative at Mr. Hampton's front, the patches were cut from Mr. Hampton's shoulders.

65. Under Title V of the ADA, defendant is prohibited from retaliating, intimidating, coercing, threatening, or interference with individuals who seek to enforce or who have enforced their rights under the ADA.

66. Defendant's conduct was in violation of the ADA, whereby Defendant retaliated, intimidated, coerced, and by show of a knife threatened Mr. Hampton for engaging in actions protected under the ADA.

67. As a result of Defendant's actions, Mr. Hampton has been damaged in an amount to be proven at trial, has suffered harm, and will continue to suffer harm.

## FOURTH CAUSE OF ACTION
Fifth and Fourteenth Amendments of the United States Constitution
-- Defendant State of Utah Department of Corrections --

68. Plaintiff hereby incorporates each and every of the preceding paragraphs as if set forth fully herein.

69. Under the Fifth and Fourteenth Amendment to the United States of America, each person's liberty and property are protected by due process and equal application of the laws.

70. Defendant's conduct, as set forth above, was in violation of the Fifth and Fourteenth Amendments of the United States Constitution.

71. As a result of Defendant's actions, Mr. Hampton has been damaged in an amount to be proven at trial, has suffered harm, and will continue to suffer harm.

## FIFTH CAUSE OF ACTION
Fourth Amendment of the United States Constitution
-- Defendant State of Utah Department of Corrections --

72. Plaintiff hereby incorporates each and every of the preceding paragraphs as if set forth fully herein.

73. Under the Fourth Amendment to the United States of America, all searches and seizures performed under the color of law must be reasonable.

74. Defendant's conduct was in violation of the Fourth Amendment of the United States Constitution, as Defendant's taking of Mr. Hampton's property was not done by first obtaining a validly written warrant, and was performed in a manner that was unreasonable under the circumstances and under the law.

75. As a result of Defendant's actions, Mr. Hampton has been damaged in an amount to be proven at trial, has suffered harm, and will continue to suffer harm.

## DEMAND FOR JURY TRIAL

76. Plaintiff demands a jury trial.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter Judgment in favor of Plaintiff and against Defendants for the following:

a. Declaratory relief, including but not limited to a declaration that the Department discriminated against Mr. Hampton as a disabled individual, and retaliated against him for requesting an accommodation, by terminating Mr. Hampton from his position;

b. Declaratory relief, including but not limited to a declaration that the Rehabilitation Act and the Americans with Disabilities Act bar the Department from denying services, programs, activities, and employment to Mr. Hampton, who is disabled, without an individualized assessment of whether they can perform the essential functions of the job (with or without a reasonable accommodation), and that the Department failed to do such an assessment prior to terminating Mr. Hampton;

c. Appropriate injunctive relief, including but not limited to reinstatement of Mr. Hampton's position with the Department and an order restraining the Department from engaging in further discriminatory, retaliatory, and or intimidating conduct of the types alleged in this Complaint;

d. Back pay in an amount to be determined at trial;

e. In the event reinstatement is not granted, front pay;

f. Compensatory and consequential damages, including without limitation for emotional and reputational damages;

  g. Punitive damages;

  h. Pre-judgment and post-judgment interest at the contracted or legal rate, whichever is higher and as applicable;

  i. Attorneys' fees and costs; and

  j. Any such further relief, whether equitable or legal as the Court deems just and appropriate under the circumstances.

  DATED this 5th day of July, 2018.

          BEARNSON & CALDWELL

          */s/ Aaron K. Bergman*
          Aaron K. Bergman
          *Attorneys for Plaintiff*