FILED
2021 SEP 21
CLERK
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| ROBERT HAMPTON,<br><br>          Plaintiff,<br><br>v.<br><br>UTAH DEPARTMENT OF CORRECTIONS,<br><br>          Defendant. | MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S [61] MOTION FOR SUMMARY JUDGMENT<br><br>Case No. 1:18-cv-00079-CMR<br><br>Magistrate Judge Cecilia M. Romero |

All parties in this case have consented to Magistrate Judge Cecilia M. Romero conducting all proceedings, including entry of final judgment (ECF 11).  28 U.S.C. § 636(c); Fed. R. Civ. P. 73.  Before the court is Defendant Utah Department of Corrections' (Defendant, Department, or UDOC) Motion for Summary Judgment (Motion) (ECF 61).  The court heard oral argument on the Motion at a hearing on July 20, 2021 (ECF 90).  Having carefully considered the relevant filings, case law, and oral argument, the court GRANTS Defendant's Motion.

## I.       PROCEDURAL BACKGROUND

Plaintiff Robert Hampton (Plaintiff or Hampton) initiated this disability discrimination suit against Defendant on July 5, 2018, alleging five causes of action for violations of the Rehabilitation Act of 1973 (Rehabilitation Act), 29 U.S.C. §§ 794, *et seq.*; the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12131, *et seq.*; and the First, Fourth, and Fourteenth Amendments of the United States Constitution (ECF 2).  Defendant filed a motion for partial dismissal of four causes of action on the grounds of Eleventh Amendment immunity (ECF 5), which the court granted (ECF 14).  The only remaining cause of action is the First Cause of Action under the Rehabilitation Act.  Plaintiff asserts three distinct claims under the

Rehabilitation Act: (1) Failure to accommodate; (2) Retaliation; and (3) Discrimination.  Plaintiff

filed a motion for partial summary judgment as to his failure to accommodate claim (ECF 50),

which he later withdrew (ECF 90).  The instant Motion filed by Defendant seeks summary

judgment on all of Plaintiff's remaining claims.

## II.    FACTUAL BACKGROUND[1]

Hampton has a disability resulting from being born with three fingers on each hand.

Hampton was employed with UDOC as a Corrections Officer and probationary employee from

May 2016 through July 26, 2017.  Larry Benzon (Benzon), the Warden at the time, hired

Hampton and extended the employment offer with knowledge of his disability.  Hampton

initially worked as a Utility, a nonpermanent position, where he had various rotating

assignments.  Though the Utility position is an unarmed position, he carried a firearm during

certain assignments.  While working as a Utility, Hampton applied for multiple permanent armed

positions.  He remained in Utility until June 17, 2017, when he was given a permanent

assignment as a Timpanogos Rover (Timp Rover), which he retained until his termination.  This

was an unarmed position, but there were circumstances where Hampton had to carry a firearm,

including during overtime assignments.

As part of his employment with UDOC, Hampton participated in the Department's

Training Academy, which included firearms training and qualification on Department-issued

weapons, including the REM870, AR15, and Glock 17 (Glock).  Weeks before Hampton started

the firearms training course, he raised concerns with Aaron Horsley (Horsley), the Firearms

Training Coordinator at the time and the Armorer at present, regarding his ability to qualify on

---

[1] The following facts are either undisputed or portrayed in the light most favorable to Hampton.  Unless otherwise noted, the facts are drawn from the Tables contained in Exhibits 1 and 2 to Defendant's Reply in support of the Motion for Summary Judgment (ECF 79-1, 79-2).

the Glock because of his hand disability.  In response, Horsley gave Hampton a "blue gun"—a plastic gun the same size, shape, and weight as the Glock—and a holster to practice with on his own.  During the firearms training course, on July 7, 2016, Hampton qualified on all three Department-issued firearms including the Glock.  All corrections officers must requalify on the Department's standard weapons annually, and Hampton requalified on the Glock in July 2017. Hampton has shot thousands of rounds using both the Glock and the Springfield 1911 (Springfield).

Since October 2014, UDOC has had a Department Firearms Policy, implemented as a result of an external audit in 2013 to address firearm safety, training, and qualifications.  Per the Firearms Policy, only Department-approved handguns are issued to authorized peace officers for on or off duty use and may be carried as an officer's primary duty weapon.  The Firearms Policy does not contain a provision with an exception to the rule that only Department-issued handguns may be carried as a primary duty weapon.  Under the Firearms Policy, Department-issued handgun types are Glock 9mm and .40 caliber semi-automatic pistols.

On February 8, 2017, Hampton made the following request by email to Jennifer Wilde (Wilde), the Human Resource Specialist at the time:

> Hi Jennifer this is Officer Hampton, I need to request a reasonable accommodation for [ADA] purposes to use a firearm other than the glock. It is difficult for me to get a solid grip on the gun and I have to readjust my grip after two rounds and with my current position as a utility and the amount of overtime that I do at UMC I would feel better using something that I am more comfortable using. If you could call me in Uinta 3 today I would appreciate it. Thank you.

Wilde responded to this email on February 9, 2017, and spoke with Hampton on the phone. Thereafter on February 13, 2017, Hampton sent Wilde information regarding the Springfield handgun, including a price sheet.  In response to Hampton's request for a Springfield, Wilde spoke with Division Director Jerry Pope (Pope) about Hampton's request.  Pope told Wilde to

refer the matter to Travis Knorr, the Firearms Training Manager and Armorer at the time.  Wilde left Knorr a voicemail but otherwise did not follow up with Hampton about his request.  Hearing no response, in April 2017, Hampton spoke with Knorr about his request to use a Springfield weapon.  Knorr declined Hampton's request to use the Springfield but never communicated this to Hampton; Wilde was not involved in this decision.  Hampton never received a written denial of his accommodation request from Wilde or Knorr.  On approximately June 17, 2017, Hampton was given a permanent assignment as a Timp Rover.

On approximately June 23, 2017, Correctional Lieutenant Jerry Price (Lieutenant Price) undertook an administrative review of an incident on June 22, 2017, involving Hampton's handling of a Variable Kinetic System (VKS) gun to determine if there were any policy violations.  During her administrative review, Price learned of a second incident on June 21, 2017, involving Hampton and the removal of a dead bird from a fence.  Based on the administrative review, the Department made the following findings:

  a. Hampton's involvement in the VKS incident created a hazardous environment by handling a weapon that he had never been trained on.
  b. Hampton's involvement in the dead bird incident risked the safety and security of the Department by putting a dead bird over security.
  c. Hampton was not truthful during his interview or in his written memo.

Benzon terminated Hampton's employment based on the findings from the administrative review.  At the time Benzon made the decision to terminate Hampton's employment, Benzon had no knowledge of Hampton's request for a Springfield.  Pope designated Hampton as ineligible for rehire after his termination.

### III.   LEGAL STANDARDS

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

R. Civ. P 56(a).  In making this determination, courts "examine the record and all reasonable inferences that might be drawn from it in the light most favorable to the non-moving party." *Barber ex rel. Barber v. Colorado Dept. of Revenue*, 562 F.3d 1222, 1228 (10th Cir. 2009) (quoting *T-Mobile Cent., LLC v. Unified Gov't of Wyandotte County*, 546 F.3d 1299, 1306 (10th Cir. 2008)).  "For there to be a 'genuine' dispute of fact, there must be more than a mere scintilla of evidence; to avoid summary judgment, the evidence must be such that a reasonable jury could return a verdict for the nonmoving party." *Aubrey v. Koppes*, 975 F.3d 995, 1004 (10th Cir. 2020) (quoting *Rocky Mountain Prestress, LLC v. Liberty Mut. Fire Ins. Co.*, 960 F.3d 1255, 1259 (10th Cir. 2020)).  Thus, a "complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Barber*, 562 F.3d at 1228 (quoting *Bruner v. Baker*, 506 F.3d 1021, 1025 (10th Cir. 2007)).  Also "mere conclusory allegations are insufficient to establish an issue of fact under Fed. R. Civ. P. 56." *Id.*

## IV.    DISCUSSION

### A.    <u>Failure to Accommodate</u>

Hampton alleges that UDOC refused to accommodate his hand disability with a Springfield rather than a Glock as his primary duty weapon.  "The ADA and the Rehabilitation Act prohibit discrimination and the denial of services 'by reason of' an individual's disability." *Sullivan v. Univ. of Kansas Hosp. Auth.*, 844 F. App'x 43, 48 (10th Cir. 2021) (citing 42 U.S.C. § 12132; 29 U.S.C. § 794(a)).[2]  To establish a failure to accommodate claim, Hampton must show that: (1) he is disabled; (2) he is otherwise qualified with or without an accommodation; (3) he

---

[2] Because "[t]he Rehabilitation Act incorporates the employment-discrimination standards in [the ADA]," 29 U.S.C. § 794(d), cases involving "ADA claims may inform [the court's] analysis." *Clancy v. Miller*, 837 F. App'x 630, 635 (10th Cir. 2020) (citing *Rivero v. Bd. of Regents of Univ. of N.M.*, 950 F.3d 754, 758 (10th Cir. 2020)).

requested a plausibly reasonable accommodation; and (4) UDOC refused to accommodate his disability. *Aubrey*, 975 F.3d at 1005.

If the plaintiff establishes a prima facie claim, the burden shifts to the defendant "to present evidence either (1) conclusively rebutting one or more elements of plaintiff's prima facie case or (2) establishing an affirmative defense, such as undue hardship or one of the other affirmative defenses available to the employer." *Id.* (quoting *Lincoln v. BNSF Ry.*, 900 F.3d 1166, 1204 (10th Cir. 2018)). "If the employer does either of the above, summary judgment will be appropriate for the employer unless the employee then presents evidence establishing a genuine dispute regarding the affirmative defenses and/or rehabilitates any challenged elements of . . . [his] prima facie case sufficiently to establish at least a genuine dispute of material fact as to such challenged elements." *Id.* at 1005–06 (quoting *Punt v. Kelly Servs.*, 862 F.3d 1040, 1050 (10th Cir. 2017)).

### 1.    Prima facie claim[3]

#### a.    *Hampton was qualified.*

Courts "employ a two-part analysis to determine whether an individual is qualified: 'First, the court determines whether the individual can perform the essential functions of the job . . . Second, *if (but only if)* the court concludes that the individual is unable to perform the essential functions of the job, the court determines whether any reasonable accommodation by the employer would enable [him] to perform those functions.'" *Mason v. Avaya Communications, Inc.*, 357 F.3d 1114, 1118 (10th Cir. 2004) (quoting *Davidson v. Am. Online, Inc.*, 337 F.3d 1179, 1190 (10th Cir. 2003)). The employee "bears the burden of showing [he] is

---

[3] UDOC does not dispute that Hampton is disabled (ECF 61 at 14). The court will therefore proceed to its analysis of whether Hampton was qualified.

able to perform the essential functions of [his] job." *Id.* at 1119 (quoting *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 400, 122 S.Ct. 1516, 1152 L.Ed.2d 589 (2002)).  However, it is the employer who "describes the job and functions required to perform that job." *Id.* (quoting *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1177 (10th Cir. 1999)).

The parties' respective arguments on this element are at best perplexing:  Hampton argues he was qualified *only* with an accommodation, which was not granted but nonetheless taken by him, and UDOC argues Hampton was qualified without an accommodation and therefore does not meet the qualified element.  The court has spent much time processing these arguments, especially UDOC's argument given that it both concedes Hampton was qualified but also that the qualified element was not met because he met its certification by qualifying on the Department-issued firearms.  Given the novelty of UDOC's argument, the court takes this opportunity to address the arguments.  UDOC argues that Hampton cannot satisfy the "otherwise qualified" element of his prima facie claim because he required no handgun accommodation to qualify on the Glock (ECF 61 at 15).  In support of its argument, UDOC relies on the "if (but only if)" language in *Mason* to suggest that if the court finds under the first prong that Hampton "can perform the essential functions of the job," then the court does not reach the second issue of whether "any reasonable accommodation by [UDOC] would enable [Hampton] to perform those functions," and Hampton therefore cannot show he met the "otherwise qualified" element of his failure to accommodate claim (ECF 61 at 17).  *See* 357 F.3d at 1118.[4]  UDOC also relies on *Robert v. Board of County Com'rs of Brown County, Kans.*, 691 F.3d 1211 (10th Cir. 2012), which described the first prong of the inquiry as assessing "whether [the plaintiff's] impairment

---

[4] The "two part inquiry" referenced in the *Mason* case originates from *Chandler v. City of Dallas*, 2 F.3d 1385 (5th Cir. 1993).

prevented her from performing the essential functions of her job." *Id.* at 1216. To refute this argument, Hampton points to his testimony that he was able to qualify on the Glock only because he essentially permitted himself an accommodation by using his own personal holster and a "flipping" action with his fingers (Pl.'s Ex. A, Hampton Decl. (ECF 72-1), ¶¶ 2, 4).[5] In essence, UDOC argues that if Hampton can perform the essential functions of his job without an accommodation, then he cannot meet the qualified element of his prima facie claim, and Hampton responds by providing evidence suggesting he was not in fact able to perform the essential functions of the job (without an accommodation of using his own holster and flipping the weapon).

The court disagrees with UDOC's characterization of the two-part inquiry for the "otherwise qualified" element. In both cases relied upon by UDOC, the court proceeded to the second prong of the inquiry because the plaintiff was unable to perform the essential functions of the job. *See Robert*, 691 F.3d at 1216–17; *Mason*, 357 F.3d at 1122. UDOC provided no authority, and the court is aware of none, where the court ended its analysis of whether the plaintiff was qualified under the first prong or where the court found the plaintiff was not qualified because the plaintiff met the first prong. The court therefore rejects UDOC's interpretation of the *Mason* case. Instead, the court interprets the *Mason* case as indicating that if the court finds under the first prong that the plaintiff can perform the essential functions of the job, then the plaintiff has shown that he is "otherwise qualified" for purposes of a prima facie

---

[5] In his opposition, Plaintiff also made arguments relying on cases involving federal employers (ECF 72 at 22–23). However, the Tenth Circuit has made clear that "[f]or federal employers, . . . nondiscrimination requires more than mere 'equal treatment' of disabled employees and job applicants, and encompasses an affirmative duty to meet the needs of disabled workers and to broaden their employment opportunities." *Woodman v. Runyon*, 132 F.3d 1330, 1337–38 (10th Cir. 1997). Because "federal employers are charged with a greater duty to ensure the employment of disabled workers than are federal grantees or private employers, *id.* at 1338 (citing *Southeastern Community College v. Davis*, 442 U.S. 397, 410, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979)), the cases relied upon by Plaintiff are inapposite.

claim for failure to accommodate, and the court may then proceed to the third element of determining whether the requested accommodation was reasonable.  To hold otherwise would lead to the perplexing situation present in this case where the plaintiff feels compelled to provide evidence that he was not in fact qualified despite bearing the burden to show the exact opposite.

Turning to the facts of this case, the undisputed facts demonstrate that Hampton could perform the essential functions of his job as a corrections officer with UDOC.  While the parties dispute whether *carrying* a firearm was an essential function of Hampton's job (ECF 72 at 24), there appears to be no dispute that *qualifying* to carry Department-issued firearms was an essential function of his job.  The undisputed facts show that Hampton qualified on all three Department-issued firearms including the Glock.  On this basis, the court concludes that Hampton was able to perform the essential functions of his job and therefore meets the "otherwise qualified" element of his prima facie claim.

The court rejects Hampton's argument that disputes of fact exist as to whether he was qualified because of safety concerns with the Glock (ECF 72 at 26).  Hampton's testimony relating to his use of a personal holster and a "flipping" action to fire the Glock is not material because again, the undisputed facts show that he nonetheless qualified on all Department-issued firearms including the Glock.  To the extent Hampton attempts to argue that operating the Glock *safely* is an essential function of his job, Hampton has failed to present sufficient evidence to support this argument, relying only on his "own self-serving testimony" about using a personal holster and flipping the weapon.  *See Mason*, 357 F.3d at 1121–22.  In rejecting this approach, the Tenth Circuit noted its reluctance "to allow employees to define the essential functions of their positions based solely on their personal viewpoint and experience."  *Id.*  The court declines to do so here.

### *b.   Hampton's requested accommodation was not reasonable.*

"When alleging a failure to accommodate, a plaintiff carries the burden of demonstrating the existence of a facially reasonable accommodation.  If a plaintiff clears that initial hurdle, the burden shifts to [his] employer to show its inability to provide the requested accommodation." *Hennagir v. Utah Dept. of Corrections*, 587 F.3d 1255, 1264 (10th Cir. 2009) (citing *Mason*, 357 F.3d at 1122).  "The idea of accommodation is to enable an employee to perform the essential functions of his job; an employer is not required to accommodate a disabled worker by modifying or eliminating an essential function of the job."  *Mathews v. Denver Post*, 263 F.3d 1164, 1168–69 (10th Cir. 2001).  Courts "weigh heavily the employer's judgment regarding whether a job function is essential."  *Hennagir*, 587 F.3d at 1264 (citing *Mason*, 357 F.3d at 1119).  The court "will not second guess the employer's judgment when its description is job-related, uniformly enforced, and consistent with business necessity."  *Mason*, 357 F.3d at 1119 (citing *Davidson*, 337 F.3d at 1191).  Rather, the court will "defer to employment guidelines as 'constituting a body of experience and informed judgment.'"  *Wilkerson v. Shinseki*, 606 F.3d 1256, 1263 (10th Cir. 2010) (quoting *Tate v. Farmland Indus. Inc.*, 263 F.3d 989, 994 (10th Cir. 2001)).

Here, Hampton requested that UDOC accommodate his hand disability by allowing him use of a Springfield.  The undisputed facts show that under the Firearms Policy, only Department-approved handguns are issued and may be carried as a primary duty weapon and that the only Department-issued handgun types are specified models of the Glock.  The undisputed facts also show that the Firearms Policy does not contain any provision for an exception to this

rule.[6]  Hampton's requested accommodation clearly violates the Firearms Policy because a Springfield is not one of the approved Department-issued handgun types.

UDOC was not required to eliminate or modify the Firearms Policy to accommodate Hampton's request.  The Tenth Circuit has recognized that "an employer isn't compelled to modify its [] policy when other effective and reasonable accommodations exist because normally the right to choose among effective remedial accommodations rests with the employer," unless a policy is "a sham and other employees are routinely granted dispensations that disabled employees are not."  *See Hwang v. Kansas State University*, 753 F.3d 1159, 1163–64 (10th Cir. 2014).  Based on the undisputed evidence presented, the court finds the Firearms Policy's rules for the issuance of approved firearms are job-related, uniformly enforced, and consistent with business necessity and therefore entitled to deference.  Because Hampton's requested accommodation violated the Firearms Policy, the court concludes that it was facially unreasonable, and Hampton has failed to meet the third element of his prima facie claim.

The court rejects Hampton's attempts to rehabilitate this element by arguing that carrying the Glock is not an essential function of his job because: (1) the Firearms Policy was adopted recently in 2014; (2) officers can carry the backup weapon of their choice; and (3) UDOC has Springfields in its armory (ECF 72 at 29–31).  Hampton's first argument fails because UDOC's prior firearm policies or lack thereof is irrelevant.  Because the employer has the "'ability to establish or change the content, nature, or functions of a job,'" the court looks to "whether a job function was essential *at the time* it was imposed on [the employee]."  *See Hennagir*, 587 F.3d at 1262 (emphasis added) (quoting *Milton v. Scrivner, Inc.*, 53 F.3d 1118, 1124 (10th Cir. 1995)).

---

[6] Plaintiff argues this fact is disputed because it is a legal conclusion given that all employers must comply with the Rehabilitation Act.  The court disagrees with this argument.  It is clear from the plain language of the Firearms Policy that there is no written exception to this rule.  This is therefore an undisputed fact.  In any event, it is also undisputed that UDOC had adopted a separate written policy addressing reasonable accommodation.

At the time Hampton requested an accommodation, an essential function of his job was that he qualify on Department-issued firearms, which under the Firearms Policy included the Glock. The court declines to second-guess the limitations on Department-approved handgun types set forth in the Firearms Policy.

Second, Hampton's argument that officers can carry the backup weapon of their choice is both inaccurate and immaterial. In making this argument, Hampton mischaracterizes the Firearms Policy. Under its plain language, only *law enforcement officers* are permitted to carry an approved backup weapon—not correctional officers like Hampton—and only the Glock, Sig Sauer, or Smith & Wesson are approved (Def.'s Ex. 16, UDOC Firearms Policy (ECF 61-16), AF21/05.02, AF21/01.02, AF/01.05). Further, while Hampton's email does not clearly indicate whether he is requesting the Springfield as his primary duty weapon or his backup weapon, this distinction is immaterial where either request would have violated the Firearms Policy.

Finally, the court disagrees with Hampton's argument that there is a dispute of fact as to whether there was a deviation from the Firearms Policy because of the Springfields in the armory. Hampton has not presented any evidence to counter Horsley's testimony as the Armorer that he was not aware of any deviations from the Firearms Policy and that the Springfields in the armory were intended for use in a competition (Def.'s Ex. 9, Horsely Dep. (ECF 61-9), 23:14–24:7, 26:18–22). Hampton has thus failed to show that the Firearms policy limiting Department-issued handgun types to the Glock is a sham or that qualifying to carry Department-issued firearms, including the Glock, is not an essential function of his job. Hampton's conclusory allegations fail to establish a dispute of fact as to whether his requested accommodation was reasonable. The court therefore concludes that Hampton has failed to meet the third element of his failure to accommodate claim.

Because Hampton has failed to meet the third element of showing a facially reasonable accommodation, the court need not consider the fourth element—whether UDOC engaged in the interactive process or whether it refused Hampton's accommodation request. *See Hennagir*, 587 F.3d at 1265 ("Even if [an employer] fail[s] to fulfill its interactive obligations to help secure a [reasonable accommodation], [the plaintiff] will not be entitled to recovery unless [he] can also show that a reasonable accommodation was possible." (quoting *Smith v. Midland Brake, Inc.*, 180 F.3d 1154, 1174 (10th Cir. 1999))). Accordingly, this claim fails as a matter of law, and UDOC is entitled to summary judgment.

### B. Retaliation

Hampton asserts two retaliation claims based on his termination and on his reassignment to the Rover position. The Tenth Circuit has long held that "the Rehabilitation Act prohibits not just discrimination on the basis of disability but retaliation against those who report disability discrimination." *Hwang*, 753 F.3d at 1165 (citing *Jarvis v. Potter*, 500 F.3d 1113, 1125 (10th Cir. 2007)). A prima facie claim of retaliation requires Hampton to show that (1) he engaged in protected activity; (2) he suffered a materially adverse action by UDOC either after or contemporaneous with his protected activity; and (3) a causal connection between his protected activity and UDOC's adverse action. *See Reinhardt v. Albuquerque Pub. Sch. Bd. of Educ.*, 595 F.3d 1126, 1131 (10th Cir. 2010). In the absence of direct evidence as here, Hampton may rely on the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Id.* Under this framework, if Hampton meets his burden to establish a prima facie retaliation claim, the burden then shifts to UDOC to "produce evidence of a legitimate, nonretaliatory reason for the adverse action." *Id.* If UDOC

does so, then "the burden of production shifts back to [Hampton] to show that the proffered reason is pretextual." *Id.*

Here, for purposes of its Motion, UDOC does not dispute the first two elements of Hampton's retaliation claim (ECF 61 at 36).  The court will therefore focus its analysis on the third element of whether Hampton has demonstrated a causal connection between his protected activity and UDOC's adverse action.  To satisfy this element, Hampton "must show that the individual who took the adverse action against [him] knew of [his] protected activity." *Montes v. Vail Clinic*, 497 F.3d 1160, 1176 (10th Cir. 2007) (quoting *Williams v. Rice*, 983 F.2d 177, 181 (10th Cir. 1993)).  This is because "the proximity between a specific . . . activity and the alleged retaliatory act is meaningless unless those who caused the alleged retaliatory act to occur are shown to have been aware of the specific activity." *Hysten v. Burlington N. & Santa Fe Ry.*, 296 F.3d 1177, 1184 (10th Cir. 2002).

### 1.    Termination

UDOC argues that Hampton cannot satisfy this element because Benzon testified he was unaware of Hampton's request for a Springfield at the time that he made the decision to terminate Hampton (ECF 61 at 38).  While Hampton concedes this fact is undisputed (ECF 79-1, Fact 58), Hampton argues that it is "very unlikely" Benzon did not know of Hampton's accommodation request at the time of the termination because of internal policies requiring that Pope inform him of such requests and because Hampton told Benzon he may need an accommodation at his employment interview (ECF 79 at 38-39).  UDOC refutes this argument as pure speculation because there is no evidence that Wilde or Pope told Benzon of the accommodation request and the fact that Hampton previously asked for an "unidentified accommodation" does not show knowledge of the specific request at issue in this case (ECF 79

at 18).  The court agrees that Hampton's speculative and conclusory allegations fail to establish a dispute of fact as to whether Benzon knew of Hampton's accommodation request at the time of his termination.  To conclude otherwise would require the court to make a credibility determination about Benzon's testimony regarding his knowledge of the request, which is inappropriate at the summary judgment stage.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ("[A]t the summary judgment stage the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.").  Hampton has therefore failed to meet his burden to show a causal connection between his protected activity and the adverse action.  Accordingly, Hampton's retaliation claim based on his termination fails as a matter of law, and UDOC is entitled to summary judgment.

### 2.      Reassignment

In his opposition, Hampton alleges an additional retaliation claim based on his reassignment as a Rover, an unarmed position, despite having applied for armed positions (ECF 72 at 37).  In response, UDOC argues that Hampton's reassignment was not retaliatory because he was transferred from a non-permanent post as a Utility to a permanent post as a Rover, the reassignment did not alter his title, responsibilities, or benefits, and he "lost no privileges in his ability to carry Department-issued weapons or perform armed assignments" (ECF 79 at 21-22).  The court agrees with UDOC.  The court "will not consider 'a mere inconvenience or an alteration of job responsibilities' to be an adverse employment action."  *See Sanchez v. Denver Public Schools*, 164 F.3d 527, 532 (10th Cir. 1998) (quoting *Crady v. Liberty Nat'l Bank & Trust Co.*, 993 F.2d 132, 136 (7th Cir. 1993)) (salary and benefits remained the same); *see also Hill v.*

*Steven Motors, Inc.*, 97 F. App'x 267, 280 (10th Cir. 2004) (no significant change in employment status).

Unlike Hampton's retaliation claim based on his termination, the parties did not identify the decisionmaker for Hampton's reassignment, explain the reasons for the reassignment, or provide evidence regarding his or her knowledge of Hampton's requested accomodation. Moreover, Hampton has not presented evidence showing that there was an alteration of job responsibilities between the Utility and Rover positions. Absent this evidence, the fact that Hampton was reassigned to a permanent position from a nonpermanent position tends to support that he was promoted rather than demoted. While he desired and applied for a permanent armed position, the undisputed facts show that even in the unarmed Rover position, there were circumstances where he had to carry a firearm such as for overtime assignments. On this basis, the court concludes that Hampton has failed to establish that his reassignment was an adverse employment action, and his retaliation claim based on his reassignment fails as a matter of law. Because Hampton has failed to demonstrate a causal connection between his protected activity and UDOC's adverse action, UDOC is entitled to summary judgment on Hampton's retaliation claims.

### C.  <u>Discrimination</u>

Hampton alleges that UDOC discriminated against him by terminating his employment because of his hand disability. To establish a prima facie claim of discrimination, Hampton must show that (1) he is disabled; (2) he is qualified for the job held or desired; and (3) he suffered an adverse employment action because of his disability. *See Aubrey*, 975 F.3d 995 at 1014. To recover on a discrimination claim, Hampton "must prove that [UDOC] acted with a discriminatory animus against [him] because [he] had a disability." *See id.* Because Hampton

relies on indirect or circumstantial evidence of discriminatory animus, the court examines his discrimination claim under the *McDonnell Douglas* burden-shifting framework articulated above.  *See Montes*, 497 F.3d at 1173.  Once again, UDOC focuses its arguments on the third element relating to the causal connection between Hampton's termination and his disability.  The third element "requires [Hampton] to present some affirmative evidence that disability was a determining factor in [UDOC's] decision.  This burden is 'not onerous,' but it is also 'not empty or perfunctory.'"  *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323–24 (10th Cir. 1997) (quoting *Ennis v. National Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 59 (4th Cir. 1995)).

UDOC argues that mere awareness of Hampton's disability is insufficient to establish the third element and that Hampton has failed to provide any affirmative evidence to establish that disability was a determining factor in his termination (ECF 61 at 43–44).  In support of this element, Hampton points to the following evidence: (1) his brother Daniel Hampton's testimony that Benzon inquired about this lawsuit and said "good answer" when Daniel said he was not involved; (2) UDOC ignored and "de facto denied" his reasonable accommodation request; (3) UDOC's denial of a promotion to an armed position; and (4) UDOC did not interview or discipline other employees who engaged in the same behavior for which he was terminated (ECF 72 at 40-41).

Despite the above, the court agrees that Hampton has failed to meet his burden to show that his disability was a determining factor in UDOC's actions.  With respect to Daniel Hampton's testimony, not only is this evidence hearsay, but it is also irrelevant because Benzon's alleged comments about the instant litigation, which was initiated in July 2018 (ECF 2), were made at least a year or more after Hampton's reassignment and termination in June 2017.  Because this evidence lacks temporal proximity to UDOC's actions, it is insufficient to

support a causal connection.  *See Hysten*, 296 F.3d at 1184 ("[U]nless the termination is *very closely* connected in time to the protected activity, the plaintiff must rely on additional evidence beyond temporal proximity to establish causation." (quoting *Anderson*, 181 F.3d at 1179)).

Hampton's second piece of evidence is that Defendant ignored, and de facto denied, his request for the Springfield accommodation, which he argues supports a causal connection between his disability and termination.  The court disagrees and notes this is more of a legal conclusion as to the issue of whether UDOC refused his accommodation request, which did not require consideration as part of the failure to accommodation claim as Hampton failed to meet the third element.  Regardless, with respect to the statement that the UDOC ignored his request, the undisputed evidence shows that Wilde responded to Hampton's request and forwarded it to Knorr for decision, and while Wilde did not communicate with Hampton thereafter, she did forward the request to Knorr.  Hampton then discussed the request with Knorr.  While the court disagrees with UDOC's argument that moving Hampton to the Rover position mooted his request for an accommodation, that fact is irrelevant as the facts do not support that that UDOC ignored Hampton's accommodation request.  UDOC did, however, fail to communicate with Hampton and completely process his request, which is troubling but does not demonstrate a causal connection between his disability and his termination.  This is especially true given the undisputed fact that Benzon made the decision to terminate Hampton, and there is no evidence that he knew of the request for an accommodation.  While the court agrees with Hampton that the facts are concerning in the terms of the lack of communication in the interactive process and about the denial, this is not in itself affirmative evidence that his disability was a motivating factor for UDOC's actions.  Further, the court has explained that his request for a Springfield violated the Firearms Policy, which would be a legitimate nondiscriminatory reason for the

denial, and Hampton has failed to provide any evidence of pretext specifically relating to this alleged denial.

Next, Hampton argues that UDOC's decision to reassign Hampton to the Rover position was a denial of a promotion to an armed position and supports a causal connection. The court has previously found that the reassignment was not an adverse employment action (*See supra* Part IV.B.2). Moreover, Hampton has not shown any evidence that his disability was a motivating factor for the reassignment. Hampton has not identified the decisionmaker for the reassignment or presented evidence that this decisionmaker knew of his disability or accommodation request. This argument is too tenuous and not supported by sufficient factual support. Even if the court assumes that Hampton is relying on the decisionmaker's knowledge of his disability, mere knowledge of his disability is insufficient to support a causal connection. *See Ainsworth v. Indep. Sch. Dist. No. 3 of Tulsa Cty., Okla.*, 232 F. App'x 765, 771 (10th Cir. 2007) ("[W]hile we have held that an employer must know of a disability before it can be held liable . . . , it does not follow that a reasonable inference of discrimination may be drawn from mere awareness of a disability or that mere awareness is affirmative evidence that may establish the third element of the prima facie case.").

Finally, Hampton's evidence about other employees involved with the bird and VKS incidents who were not disciplined also fails to show a causal connection because he has provided no evidence to show that these individuals were true comparators to Hampton. At minimum, this would include whether they were probationary (or permanent) employees like he was at the time that the alleged policy violations that formed the basis of his termination occurred. Further, while Hampton points to Benzon's testimony that he knew about the other employee involved with the bird incident (Def.'s Ex. 6, Benzon Fact Dep. (ECF 61-6), 35:23–

36:13), Hampton has failed to bring forth evidence to dispute UDOC's evidence that Benzon was unaware of the other employee involved with the VKS incident at the time he made the decision to terminate him (Def.'s Ex. 11, 30(b)(6) Dep. (ECF 61-11), 183:22–184:19).  Again, the primary piece of evidence that Hampton has presented is Benzon's knowledge of Hampton's disability, but this is insufficient to show a causal connection between his disability and his termination.

In sum, Hampton has failed to meet his burden to provide affirmative evidence that his disability was a determining factor in UDOC's actions and therefore has failed to show the causal connection necessary to establish the third element of his prima facie claim.  Accordingly, Hampton's discrimination claim fails as a matter of law, and UDOC is entitled to summary judgment.

## V.    ORDER

For the foregoing reasons, Defendant's Motion for Summary Judgement (ECF 61) is GRANTED.  Plaintiff's failure to accommodate, retaliation, and discrimination claims under the Rehabilitation Act are DISMISSED with prejudice.

IT IS SO ORDERED.

DATED this 21 September 2021.

_Cecilia M. Romero_
Magistrate Judge Cecilia M. Romero
United States District Court for the District of Utah